# NO. 16-1805

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**BEAR CREEK TECHNOLOGIES, INC.,**

**Appellant**

v.

**CISCO SYSTEMS, INC.,**

**Appellee**

## CORRECTED BRIEF OF APPELLEE CISCO SYSTEMS, INC.

**From the Patent Trial and Appeal Board, No. 2015-006387
Before Marc S. Hoff, David M. Kohut, and Eric B. Chen,
Administrative Patent Judges**

David L. McCombs
Debra J. McComas
Thomas W. Kelton
Gregory P. Huh
**HAYNES AND BOONE LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 972.739.8636
Facsimile: 972.692.9116
*David.McCombs@haynesboone.com*
*Debbie.McComas@haynesboone.com*
*Thomas.Kelton@haynesboone.com*

***Attorneys for Appellee, Cisco Systems, Inc.***

## CERTIFICATE OF INTEREST FOR CISCO SYSTEMS, INC.

Counsel for Appellee, Cisco Systems, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:

Cisco Systems, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Haynes and Boone, LLP
David L. McCombs
Debra J. McComas
Thomas W. Kelton
Gregory P. Huh

Dated:  September 20, 2016.

*/s/ David L. McCombs*
David L. McCombs

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST FOR CISCO SYSTEMS, INC. ............................. i

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF RELATED CASES ..........................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE......................................................................3

    A.    Preliminary Statement ...........................................................3

    B.    The Claimed Invention of the '722 Patent ............................3

    C.    Cisco's *Inter Partes* Reexamination ....................................5

    D.    The Iwami Reference ............................................................7

    E.    The Examiner's and Board's Reasoning...............................10

SUMMARY OF THE ARGUMENT .......................................................14

ARGUMENT .......................................................................................17

I.    Standard of Review............................................................................17

II.    The Board's Factual Determination That Iwami Discloses the Claimed "IP versus another phone network discriminator" Is Supported By Substantial Evidence, Thereby Rendering Claims 1-22 of the '722 Patent Obvious....................................................18

    A.    Bear Creek's Arguments Regarding Limitations In Iwami's Disclosure Regarding Call Direction Are Without Merit. ...................................................................19

    B.    Substantial Evidence Supports the Board's Finding that Iwami Discloses the Claimed Timing Relationship Between the Discriminator and First Media Converter. ....................22

    C.    Substantial Evidence Supports the Board's Determination That Program 31 Relates to the Communications Server....................27

III.   Bear Creek's Remedy, If Any, Is a Remand for the Board's Consideration of the Many Alternative Grounds of Rejection Adopted by the Examiner. ..............................................................29

CONCLUSION AND PRAYER ............................................................30

ECF CERTIFICATION ........................................................................31

CERTIFICATE OF COMPLIANCE......................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012) ...................................................22, 28

*In re Giacomini*,
   612 F.3d 1380 (Fed. Cir. 2010) ...........................................................23

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)..................................................................................17

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
   640 Fed.Appx. 951 (2016).....................................................................22

*Jacobi Carbons AB v. U.S.*,
   619 F.App'x 992 (Fed. Cir. 2015) ........................................................23

*In re Jolley*,
   308 F.3d 1317 (Fed. Cir. 2002) ......................................17, 19, 22, 28

*In re Kubin*,
   561 F.3d 1351 (Fed. Cir. 2009) ...........................................................17

*In re Morris*,
   127 F.3d 1048 (Fed. Cir. 1997) ...........................................................26

*In re Mouttet*,
   686 F.3d 1322 (Fed. Cir. 2012) ...........................................................17

*In re NTP, Inc.*,
   654 F.3d 1279 (Fed. Cir. 2011) ...........................................................17

*Panduit Corp. v. Dennison Mfg. Co.*,
   810 F.2d 1561 (Fed. Cir. 1987) ...........................................................21

*In re Warsaw Orthopedic, Inc.*,
   No. 2015-1050, 2016 WL 4191193 (Fed. Cir. August 9, 2016) ........23

**Statutes**

35 U.S.C. § 103(a) ............................................................................................*passim*

**Other Authorities**

37 C.F.R. § 41.67(c)(1)(vii) .....................................................................................22

## STATEMENT OF RELATED CASES

Cisco Systems, Inc. ("Cisco") adopts Appellant Bear Creek Technologies,

Inc. ("Bear Creek")'s Statement of Related Cases.

## STATEMENT OF THE ISSUES

The issue on appeal is whether substantial evidence supports the Board's determination that claims 1-22 of U.S. Patent No. 7,889,722 ("'722 Patent") are obvious under 35 U.S.C. § 103(a).

# STATEMENT OF THE CASE

## A.    Preliminary Statement

This appeal involves the well-known field of Voice over Internet Protocol ("VoIP") technology. The appeal arises from the Board's determination that claims 1-22 of the '722 Patent are obvious. During *inter partes* reexamination of the '722 Patent, the Examiner rejected all pending claims of the '722 Patent under 35 U.S.C. § 103(a) as obvious in view of multiple references. Bear Creek challenges the Board's decision affirming the Examiner's obviousness determination. Notably, Bear Creek does not challenge the Board's claim construction, nor argue lack of substantial evidence, but instead only challenges the merits of the Board's treatment of the evidence supporting the Examiner's factual findings that ultimately underlie the Examiner's obviousness finding. Additionally, one of the arguments raised by Bear Creek is completely new and should, therefore, be disregarded. For at least these reasons, set forth in detail below, the Court should affirm—Bear Creek has not established the Board committed any legal error and the Board's obviousness determination is supported by substantial evidence.

## B.    The Claimed Invention of the '722 Patent

The '722 Patent is directed to a telecommunications system, and more specifically to a VoIP system. The system generally allows for linking standard telephony communications with internet protocols. (Appx0015, '722 Patent,

Abstract.) Claims 1 and 20-22 are representative claims in this appeal.[1] Claim 1 is

reproduced below for reference:

> Claim 1. Apparatus comprising:
>
> an Internet phone server capable of being in communication with an originating phone device, the originating phone device being capable of both dialing a given destination number of a given destination device and thereby initiating a given call between the originating phone device and the given destination device, an auditory dial tone being caused at the originating phone device when the originating phone device is in an off-hook state and operatively connected to the Internet phone server, the given call including transmission of transmitted media between the originating phone device and the given destination device;
>
> a first media converter configured to convert the transmitted media for the given call received from the originating phone device, to transmitted IP addressed media;
>
> a destination number determination mechanism configured to determine a given destination number of the given call placed by the originating phone device; **an IP versus another phone network discriminator configured to determine, after the transmitted media is converted by the first media converter to the transmitted IP addressed media**, whether a given destination phone device addressed by the given destination number resides on an IP addressed network, for which the transmitted IP addressed media is converted by the first media converter, or resides on another phone network;

---

[1] Bear Creek does not argue for separate patentability of dependent claims 21 and 22. (*See* Appellant's Br. at 10-12.) Instead, Bear Creek only provides arguments with respect to independent claims 1 and 20. (*See, e.g., id.* at 21-22.)

4

a second media converter configured to convert the transmitted IP addressed media of the given call to another network signal suitable for another phone network when the discriminator determines that the given destination number resides on the other phone network; and

a communication mechanism configured to connect the given call over an Internet connection without converting the transmitted IP addressed media of the given call to the other network signal, when the discriminator determines that the given destination device addressed by the given destination number resides on the IP addressed network.

(Appx0043, '722 Patent at claim 1, emphasis added.)

As discussed in detail below, the Examiner found, and the Board affirmed, that the claimed "IP versus another phone network discriminator" is disclosed by Iwami. (Appx0007-0008.) Thus, in this appeal, the only claim limitation at issue is the "IP versus another phone network discriminator" limitation.

## C.    Cisco's *Inter Partes* Reexamination

On September 12, 2012, Cisco filed its Request for *Inter Partes* Reexamination. (*See* Appx0049.) The Request was granted by the PTO on November 28, 2012; claims 1–22 were finally rejected by the Examiner; and the Right of Appeal Notice was issued on August 15, 2014. (*See* Appx3966-4082.) During reexamination, the Examiner found all claims of the '722 Patent obvious based on multiple grounds:

5

1.      Claims 1-8 and 10-22 were rejected under 35 U.S.C. § 103(a) as obvious over Baratz (US 5,742,596; Apr. 21, 1998) and Turock (US 6,243,373 B1; June 5, 2001);

2.      Claim 9 was rejected under 35 U.S.C. § 103(a) as obvious over Baratz and Turock, as evidenced by White (US 6,711,241 B1; Mar. 23, 2004);

3.      Claims 1-12 and 14-22 were rejected under 35 U.S.C. § 103(a) as obvious over Iwami (US 5,604,737; Feb. 18, 1997) and Baratz;

4.      Claim 13 was rejected under 35 U.S.C. § 103(a) as obvious over Iwami and Baratz, as evidenced by Lindgren (B. LINDGREN & LEIF JONSSON, ILLUSTRATED ISDN 1-6 to -9 (1991));

5.      Claims 1-3, 5, 6, 8-14, and 16-22 were rejected under 35 U.S.C. § 103(a) as obvious over Jonas (US 2001/0040885 Al; Nov. 15, 2001) and Kubler (US 5,726,984; Mar. 10, 1998);

6.      Claims 4 and 15 were rejected under 35 U.S.C. § 103(a) as obvious over Jonas, Kubler, and Pepe (US 5,742,905; Apr. 21, 1998);

7.      Claim 7 was rejected under 35 U.S.C. § 103(a) as obvious over Jonas, Kubler, and Iwami;

8.      Claims 1-3, 5-14, and 16-22 were rejected under 35 U.S.C. § 103(a) as obvious over Schindler (US 6,954,453 B1; Oct. 11, 2005), Merritt (Ian H. Merritt, Providing Telephone Line Access to a Packet Voice Network, Report No.

ISI/RR-83-107, Information Sciences Institute, University of Southern California (1983)), and Kubler; and

9.    Claims 4 and 15 were rejected under 35 U.S.C. § 103(a) as obvious over Schindler, Merritt, Kubler, and Pepe.

These rejections were maintained by the Examiner throughout the reexamination. (*See*, *e.g.*, Appx3970-3971 and Appx0005-0006.) On appeal, the Board affirmed the Examiner's rejections based solely on the grounds that included the Iwami reference. (*See* Appx0013.) Specifically, the Board affirmed that the claimed "IP versus another phone network discriminator" is disclosed by Iwami. (Appx0007-0008.) The Board found it unnecessary to reach the remaining obviousness rejections, as all of the pending claims 1-22 had been addressed and found unpatentable. (*See* Appx0013.) Thus, at issue in this appeal are the rejections of claims 1-22 based on the Iwami reference, *i.e*., grounds 3 and 4.

### D.    The Iwami Reference

The Iwami reference discloses a system that makes phone calls from one device to another over both an IP network and the PSTN. (*See* Appx5498 at 1:55-60.) Specifically, Iwami discloses a voice communication system that allows a user at a device on a LAN or other packet switched network to communicate with a user at a device on a telephone network. (*See, e.g.*, Appx5504 at 13:19-24.) Iwami provides a communication server that sits between a LAN and a PSTN and

7

provides connections and signal conversion between the different networks. (Appx5478 at Fig. 1, Appx5484 at Fig. 7, and Appx5502-5503 at 10:66-11:17.) Figure 1 of Iwami is reproduced below to show the components discussed above, where communication terminals 10 are devices used to make and receive voice calls from LAN 10:



**Iwami, Fig. 1**
**(Appx5478)**

When a user at a communication terminal 10 calls a telephone 2 on the public network 3, the communication server 20 receives the communication

request from the communication terminal 10 and sets up a telephone connection with the telephone. (Appx5488 at Fig. 11, Appx5504 at 13:19-24.) The communication terminal 10 communicates in packets and the communication server 20 converts between packets and telephone signals as it facilitates the communication. (Appx5498-5499 at 2:52-3:10.) Similarly, a telephone 2 can make a call to a communication terminal 10 by calling the communication server 20, which sets up the call and converts signals. (Appx5498-5499 at 2:52-3:10.) The Abstract further confirms that Iwami discloses the communication server discriminating between a telephone number and a terminal address, and it is not limited to whether the call originates on the LAN or the PSTN. (Appx5477, Abstract.).

When a communication terminal 10 makes a communication request, the communication server 20 determines whether the address of the called party is an address of a communication terminal 10 or a telephone 2. (Appx5477, Abstract.) Fig. 11 illustrates a process wherein a communication terminal on the LAN calls to a telephone on a public network. At step 451, the communication terminal 401 transmits media, such as a voice communication request, to communication server

402. The voice communication request is converted to IP addressed media before it is sent to the server 402. (*See also* Appx5506 at 17:44-55.)[2]



**Iwami, Fig. 11**

### E.     The Examiner's and Board's Reasoning

In rejecting the claims during reexamination, the Examiner adopted Cisco's argument that Iwami teaches "an IP versus another phone network discriminator configured to determine, after the transmitted media is converted by the first media

---

[2]   Although the Board relied on Iwami in view of Baratz, we do not discuss Baratz here because the Board found Iwami to be the relevant disclosure that renders the applicable limitation obvious. For a discussion of Baratz, *see* Appx0067-0069 and Appx5882-5883.

converter to the transmitted IP addressed media." (*See* Appx0449, Appx0457-0459.) According to the Examiner, this limitation is taught because Iwami teaches:

> The communication server enables a voice communication between a telephone on the public network and a communication terminal connected to the LAN by performing processing similar to that for a voice communication between two communication terminals connected to the LAN. **The communication server determines whether an address of the other party inputted by a user is a communication terminal address or a telephone number**, and transmits a voice communication request to a communication terminal of the other party when the address is a communication terminal address. When the address is a telephone number, the user acquires the communication terminal address of the communication server, and transmits a voice communication request to the communication server. Thereafter, the voice communication processing is performed through the communication server.

(Appx4013-4014, Iwami, Abstract, emphasis by Examiner.) The Examiner further noted that Iwami discloses:

> "FIG. 11 shows an exemplary sequence of the processing performed when a telephone 2 connected to the public network 3 and a communication terminal 10 connected to the LAN 1 communicate with each other through the communication server 20 by a request from the communication terminal 10 connected to the LAN 1 in FIG 1."

(Appx4014, Iwami, 13:19-24.) In short and in particular, the Examiner concluded that the disclosure in Iwami of the communication server 20 determining whether an address is a communication terminal address (IP address of a computer) or a telephone number, discloses the claimed an "*IP versus another phone network discriminator*." The Examiner further concluded that Iwami's communication

request satisfies the claimed "*transmitted media*" limitation (*see, e.g.*, Appx4014) and that based on the sequences disclosed in Iwami, the discrimination action happens after the voice communication request is converted to IP addressed media. (*See, e.g.*, Appx4014.)

Before the Board, Bear Creek made only two arguments regarding the Iwami reference in an attempt to show that "Iwami does not describe *at least an IP versus another phone network discriminator*." (*See* Appx4102-4103, emphasis in original.)  Bear Creek argued (1) "[t]he user's input of the numeric characters provides the information utilized by the communication server 20," and (2) that "Iwami teaches away from the claims." (*See* Appx4102-4103.)  Bear Creek does not present either of these arguments in the instant appeal.

The Board agreed with the Examiner's determination.  (*See* Appx0006.) The Board concluded: "the claim language 'an IP versus another phone network discriminator' is broad enough to encompass communication server 20 of Iwami, having program 31 which discriminates between a telephone number and an address for a terminal." (Appx0008.)  The Board further rejected Bear Creek's "teaching away" arguments as "conclusory" and further noted that Bear Creek failed to "provide any persuasive arguments as to how Iwami criticizes, discredits, or otherwise discourages the claimed 'IP versus another phone network discriminator.'" (Appx0008.)

This appeal by Bear Creek followed.  As will be explained below, the Board appropriately relied on the substantial evidence of record in affirming the Examiner's finding that claims 1-22 of the '722 Patent would have been obvious to a person of skill in the art in view of Iwami.  (*See* Appx0006-0008.)

# SUMMARY OF THE ARGUMENT

The relevant limitation on appeal is the "*IP versus another phone network discriminator.*" Bear Creek argued before the Board that the Iwami reference does not disclose the network discriminator limitation because the user herself inputs either a telephone number or a communication terminal address. (*See* Appx4012-4013.) The Board disagreed and made the factual determination that "the claim language 'an IP versus another phone network discriminator' is broad enough to encompass communication server 20 of Iwami, having program 31 which discriminates between a telephone number and an address terminal." Appx0008; *see also* Appx0007 (citing additional substantial evidence for this factual determination). In doing so, the Board found: "Iwami explains that '[t]he communication server [20] determines whether an address of the other party inputted by a user is a communication terminal address or a telephone number' (Abstract)." (Appx0007, alterations in original.)

Substantial evidence supports the Board's factual determination that Iwami discloses the claimed "IP versus another phone network discriminator" and its subsequent legal determination that claims 1-22 of the '722 Patent are obvious. Thus, this Court should affirm. At best, Bear Creek's appeal attempts to re-litigate the Board's factual findings on this issue without pointing to any clear error in those findings. In other words, Bear Creek does not assert that the Board

committed legal error by failing to put forth substantial evidence in support of the Board's factual findings that underpin its obviousness affirmance. Rather, Bear Creek improperly questions the correctness of the Board's factual findings. (*See, e.g.*, Appellant's Br. at 21-23.) Each argument presented by Bear Creek on this front lacks merit.

First, contrary to Bear Creek's assertion, the discrimination activity disclosed in Iwami is *not* "among different calls, coming from different originating devices and going in opposite directions." (*See* Appellant's Brief at 23-26.) The Abstract of Iwami makes no such distinction and clearly discloses that the server discriminates between a LAN terminal address and a telephone number for a single call. Indeed, the Board relied on this evidence in part to make its factual determination that Iwami disclosed the disputed limitation.

Second, Bear Creek argues the Board disregarded a timing relationship in the claims. To begin, this argument should not be considered because Bear Creek did not raise it before the Board and thus it is waived. But this argument is also without merit. In making its factual determination that the claimed discriminator was disclosed by Iwami, the Board expressly adopted the Examiner's rejections (described above), which found Iwami disclosed a discriminator to make the determination after the transmitted media is converted by the first media converter

15

to the transmitted IP addressed media. The Examiner's rejections are replete with evidence supporting this factual finding.

Third, Bear Creek's argument that the Board incorrectly attributed details of a communication terminal to the communication server disclosed in Iwami is simply incorrect. As shown below, the Board's factual determination that the relevant claim language "is broad enough to encompass communications server 20 of Iwami, having program 31 which discriminates between a telephone number and an address for a terminal" was supported by substantial, and properly attributed, evidence.

In sum, the three arguments presented on appeal by Bear Creek simply amount to a request for alternative fact findings, without identification of clear error by the Board. Such a remedy is not warranted in as much as substantial evidence supports the Board's findings. Accordingly, the Board's Decision finding the claims unpatentable as obvious should be affirmed.

# ARGUMENT

## I.    Standard of Review

Obviousness is a question of law based on underlying findings of fact.  *In re Kubin*, 561 F.3d 1351, 1355 (Fed.  Cir. 2009); *see also Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).   This Court reviews the Board's fact findings for substantial evidence.   *In re Mouttet*, 686 F.3d 1322, 1330-31 (Fed. Cir. 2012). Where there are "several reasonable but contradictory conclusions," substantial evidence exists and the Court should affirm the Board's decision.  *See In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.").   Moreover, the Court does not "reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings."  *In re NTP*, Inc., 654 F.3d 1279, 1292 (Fed. Cir. 2011).

Based on the underlying fact findings, whether a claimed invention would have been obvious under 35 U.S.C. § 103(a) is a question of law reviewed *de novo*. *In re Mouttet*, 686 F.3d at 1330-31.

**II.**    **The Board's Factual Determination That Iwami Discloses the Claimed "IP versus another phone network discriminator" Is Supported By Substantial Evidence, Thereby Rendering Claims 1-22 of the '722 Patent Obvious.**

The Board affirmed the Examiner's factual finding that Iwami teaches or suggests "an IP versus another phone network discriminator." In particular, the Board stated: "Because communication server 20 of Iwami determines if the address of the other party is connected either through LAN 1 or public network 3, Iwami teaches the limitation 'an IP versus another phone network discriminator.'" (Appx007.) In so concluding, the Board found that:

> Iwami explains that "[t]he communication server [20] determines whether an address of the other party inputted by a user is a communication terminal address or a telephone number." (Abstract.)

(Appx0007, quotations in original.);

> Figure 5 of Iwami illustrates voice communication control processing performed by voice communication program 31 (col. 9, 11. 12–14) including 'Step 124' in which "program 31 determines . . . whether or not the address of the other party with whom the user desires to speak is a telephone number consisting only of a sequence of numeric characters" (col. 9, 11. 29–33) such that "the user has requested a voice communication with a telephone 2 connected to the external public network 3" (col. 9, 11. 36–38)

(Appx0007, quotations in original, "Block Quote 2."); and

> Otherwise, Iwami explains that "if the address of the other party inputted by the user is not a telephone number . . . the address of the other party can be regarded as the address of a communication terminal on the LAN 1." (Col. 9, 11. 45–49.)

(Appx0007, quotations in original.)

18

Accordingly, the Board considered at least the above-presented evidence—the Abstract, Figure 5, Step 124, and Column 9 of Iwami—in reaching its factual determination.  Bear Creek does not show clear error in the Board's findings but instead asks this Court to reweigh the evidence the Board already weighed.  This is improper and the Board's decision should be affirmed summarily.  *See In re Jolley*, 308 F.3d at 1320.  Put another way, because Bear Creek does not assert on appeal that the Board did not have before it relevant evidence as a reasonable mind might accept as adequate to support the conclusion, its appeal must fail.  Nevertheless, we address each of Bear Creek's three arguments below.

### A.     Bear Creek's Arguments Regarding Limitations In Iwami's Disclosure Regarding Call Direction Are Without Merit.

In this appeal, Bear Creek questions whether the disclosure of Iwami describes discrimination between an IP network and another telephone network for a single, given call, as recited by the "IP versus another phone network discriminator" claim limitation.  (Appellant's Br. at 23-26.)  Agreeing with the Examiner, the Board found that it does.

In particular, the Board cited the Abstract of Iwami, noting the communication server determines whether an address of a relevant party is a communication terminal address or a telephone number.  (Appx0007.)  Indeed, on its face, the Abstract of Iwami explains the server discriminates with respect to a single call request:

19

**The communication server determines whether an address of the other party inputted by a user is a communication terminal address or a telephone number**, and transmits a voice communication request to a communication terminal of the other party when the address is a communication terminal address. When the address is a telephone number, the user acquires the communication terminal address of the communication server, and transmits a voice communication request to the communication server.

(Appx5477, Iwami, Abstract, emphasis added.)  Additionally, the Board noted that Figure 5 of Iwami illustrates discriminative actions performed by the voice communication program.  (*See* Block Quote 2, *supra*, Appx0007, *citing* Appx5502 at 9:12-38.)  Notably, the Board cited the discrimination of step 124 along with the disclosure in the Abstract of Iwami, to clarify what the communication server may do when receiving a telephone number in a communication request.  (Appx0007.)

Considering the circumstance in which the communication request includes an address of a LAN terminal instead of a telephone number, the Board noted that Iwami explains that "if the address of the other party inputted by the user is not a telephone number . . . the address of the other party can be regarded as the address of a communication terminal on the LAN 1."  (Appx0007, *citing* Appx5502 at 9:45-49.)  Once again, the Board cited the discrimination of step 124 to clarify the action of the communication server, *i.e.*, specifically how the communication server may determine that a communication address is directed at a LAN terminal.  All of these reasons substantially evidence the Board's factual determination that

the disclosure of Iwami discloses "an IP versus another phone network discriminator," and Bear Creek offers no argument that the Examiner or Board drew unreasonable conclusions from this evidence.

Instead, Bear Creek now asks this Court to come to a different factual conclusion and treat the disclosure of Iwami as if it excludes the disclosure of the Abstract, reading the specification to require two different call requests in two different directions. (Appellant's Br. at 23-26.) Even if Bear Creek's argument was proper (which it isn't), it ignores the fact that the words of the Abstract of Iwami expressly disclose that the server discriminates with respect to a single call request, as explained above. Thus, even if the specification of Iwami discloses an embodiment with a first call in one direction and another embodiment with a second call in another direction, the Examiner and Board found no reason to apply those teachings to the detriment of the clear teaching of the Abstract. When the Board examines the scope and content of prior art, such as Iwami, it must consider the prior art "in its entirety, i.e., as a *whole*." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) (emphasis in original).

Essentially, Bear Creek asks the Court to read Iwami differently than did the Examiner and the Board. The Board's reading is reasonable—it is backed by appropriate citation and discussion both before the Examiner and before the Board. (See, e.g., Appx3437-3438; *see also* Appx4013-4014 and Appx4068-4069; *see*

*also* Appx0006-0008.)    A reasonable conclusion adopted by the Board, even if made among several reasonable conclusions, cannot be reversed on appeal. *Jolley*, 308 F.3d at 1320; *see also In re Applied Materials, Inc.*, 692 F.3d 1289, 1299 (Fed. Cir. 2012) ("The mere fact that alternative conclusions can be drawn from the evidence is not relevant to determining whether substantial evidence supports the Board's conclusions.")    Accordingly, the Board's factual finding that Iwami discloses the claimed discriminator must be affirmed.

### B.    Substantial Evidence Supports the Board's Finding that Iwami Discloses the Claimed Timing Relationship Between the Discriminator and First Media Converter.

Bear Creek's second argument is even more faulty.  As a threshold matter, Bear Creek never raised an argument regarding the timing relationship before the Board and it should not now be allowed to raise it here.  At no point during the reexamination proceeding or the appeal before the Board did Bear Creek argue that the discrimination and conversion timing relationship was not rendered obvious in view of Iwami.[3]  *See* 37 C.F.R. § 41.67(c)(1)(vii) ("Any arguments or authorities

---

[3]    Bear Creek contends it "pointed out" this timing argument during oral argument.  (Appellant's Br. at 27).  Cisco disputes that Bear Creek made this argument during oral argument before the Board, but even if it was raised at oral argument, it was still untimely.  *See Howmedica Osteonics Corp. v. Zimmer, Inc.,* 640 Fed.Appx. 951 (2016) (finding waiver where issue was raised "for the first time during an oral hearing before the Board" and was not raised at "any point during the proceedings before the PTO.")

not included in the brief permitted under this section or §§ 41.68 [Opening Brief] and 41.71 [Rebuttal Brief] will be refused consideration by the Board, unless good cause is shown.")  As such, Bear Creek's timing argument is waived and cannot now be raised on appeal.  *See, e.g.*, *In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *see also In re Warsaw Orthopedic, Inc.*, No. 2015-1050, 2016 WL 4191193, *5 (Fed. Cir. August 9, 2016), *citing Jacobi Carbons AB v. U.S.*, 619 F.App'x 992, 1001 (Fed. Cir. 2015) (unpublished) ("[I]f all of the arguments on appeal had been made to [the agency] and the record made to support them, [the agency] may well have reached a different conclusion; however, we may not 'entertain new arguments [] and reverse [the agency] on the basis of them.'")).

Nevertheless, the Examiner and the Board offered substantial evidence in support of the factual determination that Iwami discloses the "IP versus another telephone network discriminator," including any timing component.  For example, the Examiner addressed this timing feature directly.  The rejection states:

> [C]ontrol information is one kind of transmitted media in the Iwami system.  A voice communication request is one type of control information. Fig. 11 (reproduced below) illustrates a process wherein a communication terminal on the LAN calls to a telephone on the public network 3.  At step 451, the communication terminal 401 sends a voice communication request to communication server 402.  **The voice communication request (as shown in Fig. 13) would be converted to IP addressed media before it is sent to the server 402. See Iwami at 17:44-55.  Thus, the discrimination action addressed in [1.4a] happens after the voice communication request is converted to IP addressed media.**

(Appx5889, emphasis added.)  Accordingly, the rejection cites to actions disclosed in Iwami, including converting call requests to IP addressed media and *then* performing discrimination.  This evidence was used when the Examiner reached his determination that the timing relationship of claims 1 and 20 would be rendered obvious by Iwami.

Indeed, the Examiner was consistent in citing to the call requests when discussing the discriminator.  For example, the Examiner explained:

> FIG. 11 shows an exemplary sequence of the processing performed when a telephone 2 connected to the public network 3 and a communication terminal 10 connected to the LAN 1 communicate with each other through the communication server 20 **by a request** from the communication terminal 10 connected to the LAN 1 in FIG. 1.

(Appx4014, *quoting* Appx5504 13:19-24, emphasis added.); and

> [T]he manually typed destination number by a user (i.e., caller party) is for designating a device to be communicated, and **said communication server determines whether a device designated by the destination number** typed by the caller party (i.e., a given destination phone device addressed by the given destination number) resides on a LAN connecting a terminal addressed by the destination number (i.e., an IP addresses network) or on a Public Network (i.e., another phone network; See Iwami, Abstract)

(Appx4069, emphasis added.)  Thus, the Examiner consistently relied on the same evidence when issuing his rejection.  And the Board affirmed the Examiner, also citing the Abstract and description of Figure 5 of Iwami as these portions all describe handling of a call request.  (*See* Appx0007) ("Because communication

server 20 of Iwami determines if the address of the other party is connected either through LAN 1 or public network 3, Iwami teaches the limitation 'an IP versus another phone network discriminator.'") Thus, the Board too relied on substantial evidence.

Bear Creek nevertheless questions for the first time on appeal the evidence relied on by the Examiner and Board. Bear Creek's argument, however, fails to challenge the rejection as it was actually made with respect to the timing issue. Instead, it only directly addresses payload voice rather than the portions of Iwami that were cited by the rejection, including those directed to the timing of call requests. (*See* Appellant's Br. at 27) ("The communication path has not yet been established, so payload/voice cannot be transmitted yet.")

As established above, the Examiner substantially evidenced that the actions disclosed in Iwami, including converting call requests to IP addressed media and *then* performing discrimination, would render the claimed timing relationship in claims 1 and 20 obvious to a person of skill in the art; and the Board adopted the Examiner's reasoning. Therefore, even these factual findings are supported by substantial evidence.

Furthermore, if Bear Creek is implicitly advocating for a narrow construction of "transmitted media" that includes voice media and excludes the call requests used to set up the call, such argument should be dismissed. The Examiner

25

correctly used the broadest reasonable construction standard when examining the claims.  (*See* Appx4061-4062, *citing In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997).)  In doing so, the Examiner found that the call setup actions disclosed in the Abstract of Iwami and Figure 5 of Iwami satisfy the discriminator and transmitted media features of the claims.  There is no evidence indicating that "transmitted media" should exclude call requests.

Indeed, Bear Creek's arguments (Appellant's Br. at 26-28) to this regard are belied by their own *Markman* briefing in related litigation.  (*See* Appx3608, reproduced in part below.)

| Claim Term 7 | Bear Creeks Proposal: | Verizons Proposal: |
| --- | --- | --- |
| *Transmitted media* | Media from the originating phone device that (i) is for the given call, and (ii) is received by the first media converter. The transmitted media received during the pre-payload phase of the call includes at least destination information, and the media received during the payload transfer phase of the call includes at least payload data (e.g., voice data). | Payload data, such as voice or fax, sent from the originating phone device. |

**(Excerpt from Appx3608)**

As shown above, in related litigation Bear Creek asserted that transmitted media includes "destination information" during the "pre-payload phase," *i.e.*, call

26

requests. Bear Creek should not now be allowed to minimize the importance of call requests as a type of transmitted media, having worked to emphasize the importance in related litigation.

### C. Substantial Evidence Supports the Board's Determination That Program 31 Relates to the Communications Server.

In a last ditch effort, Bear Creek argues that the Board erroneously attributed "implementation details of a communication terminal in Iwami (program 31 depicted in Figs. 3 and 5), to a telephony server." (Appellant's Br. at 28-29). Again, this argument improperly asks to the Court to come to a different factual conclusion than the Board and the Examiner. But the Board's determination is supported by substantial evidence. For example, the Board cited to Iwami's Abstract, which is clear that the communication server performs discrimination by determining whether an address of a relevant party is a communication terminal address or a telephone number. (Appx0007.) The Board also cited Figure 5 of Iwami and its discrimination step 124, using the action of step 124 to clarify in more detail how the discrimination of the Abstract may be carried out when receiving a telephone number or an address of a LAN terminal in a communication request. (Appx0007, citing Appx5502 at 9:12-38.)

The Board was aware that program 31 and Figure 5 are described with respect to a LAN terminal, as this was mentioned in briefing before the Board.

(*See*, *e.g.*, Appx4203-4204.)[4] Nevertheless, the Board chose to cite actions from Figure 5 as additional disclosure for the act of discrimination itself, rather than limit itself to a rigid inquiry of one particular box or another in Figure 1. Furthermore, the Board found no narrowing limitations in the claim language to prevent such a reading. (*See* Appx0008.) ("However, the claim language 'an IP versus another phone network discriminator' is broad enough to encompass communication server 20 of Iwami, having program 31 which discriminates between a telephone number and an address for a terminal.")

In short, the Board properly exercised its fact-finding role to read the evidence before it to disclose the IP versus another phone network discriminator. This was a reasonable conclusion adopted by the Board. That it may be one of several reasonable conclusions does not mean it is not supported by substantial evidence. And a reasonable conclusion adopted by the Board, even if made among several reasonable conclusions, cannot be reversed on appeal. *Jolley*, 308 F.3d at 1320; *see also In re Applied Materials, Inc.*, 692 F.3d 1289, 1299 (Fed. Cir. 2012). Thus, the underlying factual findings are supported by substantial evidence, and the finding of obviousness should not be disturbed.

---

[4] Bear Creek even disregarded any distinction between the server and LAN terminal in Iwami by stating, "Step 124 in Fig. 5 refers to the operation of the communication server 20, which is illustrated in Fig. 1." (Appx4234.) Bear Creek now contradicts this statement from its own briefing before the Board.

### III. Bear Creek's Remedy, If Any, Is a Remand for the Board's Consideration of the Many Alternative Grounds of Rejection Adopted by the Examiner.

Bear Creek presents no colorable argument that the Board's analysis lacks substantial evidence; thus, the Board should be affirmed. The reexamination proceeding was conclusive—there is no patentable subject matter in claims 1-22 of the '722 Patent. As mentioned above, the claims stand rejected four different ways, using the primary references of Baratz, Iwami, Jonas, and Schindler. (*See*, *e.g.*, Appx3970-3971 and Appx0004-0006.) The Examiner applied and maintained those other rejections, building a deep record of four separate primary references that each render all of the claims of the '722 Patent obvious. The Examiner found that Iwami and the other three independent combinations of prior art disclose the claimed limitation "IP versus another phone network discriminator." Bear Creek was unable to persuade the Examiner otherwise based on Iwami and combination(s), much less based on three other primary references.

If the Court were to conclude, however, that Bear Creek's arguments regarding Iwami are both properly presented and have merit, the appropriate remedy would be to remand the case to the Board so that it may address in the first instance any one, or all, of the Examiner's other prior art rejections using the other three primary references. The Board only considered and affirmed a subset of the many grounds of rejection adopted by the Examiner. The Board did not address

the other adopted grounds of rejection. (*See* Appx0005-0006 and Appx0013.) Thus, if this Court were to reverse or vacate any portion of the Board's decision, the appropriate remedy would be to remand this case for reconsideration of the many alternative grounds of rejection already adopted by the Examiner.

## CONCLUSION AND PRAYER

For the foregoing reasons, the Appellee urges the Court to affirm the Board's finding that claims 1-22 of the '722 Patent are obvious.

Respectfully Submitted,

*/s/ David L. McCombs*
David L. McCombs
Debra J. McComas
Thomas W. Kelton
Gregory P. Huh
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone: 972.739.8636
Facsimile: 972.692.9116
*David.McCombs@haynesboone.com*
*Debbie.McComas@haynesboone.com*
*Thomas.Kelton@haynesboone.com*

**Attorneys For Appellee Cisco Systems, Inc.**

## ECF CERTIFICATION

I hereby certify that (i) the required privacy redactions have been made pursuant to Federal Rule of Civil Procedure 5.2; (ii) the electronic submission is an exact copy of the paper document; (iii) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues.

*/s/ David L. McCombs*
David L. McCombs

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

■     this brief contains 5,801 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■     this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 point Times New Roman font.

*/s/ David L. McCombs*
David L. McCombs

15939915_2

31

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on _____September 21, 2016_____
by:

      ☐ U.S. Mail

      ☐ Fax

      ☐ Hand

      ☒ Electronic Means (by E-mail or CM/ECF)

| David L. McCombs | /s/ David L. McCombs |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Haynes and Boone LLP |
| Address | 2323 Victory Avenue, Suite 700 |
| City, State, Zip | Dallas, Texas 75219 |
| Telephone Number | 972.739.8636 |
| Fax Number | 972.692.9116 |
| E-Mail Address | David.McCombs@haynesboone.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

[ Reset Fields ]